UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRANDON WHATLEY, individually and on behalf of all others similarly situated,<br><br>v.<br><br>HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC | Case No. _____<br>FLSA Collective Action<br><br><br><br><br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Honda Development & Manufacturing of America, LLC's ("Honda") Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Honda's organization.

3. As a result, Honda's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the Kronos outage.

4. Brandon Whatley is one such Honda worker.

5. Honda could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the outage were resolved.

6. Instead, Honda pushed the cost of the Kronos outage onto the most economically vulnerable people in its workforce.

7. Honda made the economic burden of the Kronos outage fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. Honda's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

9. Whatley brings this lawsuit to recover these unpaid overtime wages and other damages owed by Honda to himself and Honda's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos outage, but Honda's decision to make its own non-exempt employees workers bear the economic burden for the outage.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

12. Whatley worked for Honda in this District and Division.

**PARTIES**

13. **Plaintiff Brandon Whatley** is a natural person domiciled in Calhoun County, Alabama.

14. Whatley is and was, at all relevant times, an employee of Honda.

15. Whatley has worked for Honda since March 2019.

16. Whatley represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Honda, who worked in Alabama at any time during Honda's Kronos service outage, beginning on or about December 11, 2021, until the time that Honda regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**[1]

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant Honda Development & Manufacturing of America, LLC ("Honda")** is a foreign limited liability company.

---

[1] The FLSA Collective excludes those individuals who opt into *Michael Albert v. Honda Development & Manufacturing of America, LLC*, No. 2:22-cv-00694-EAS-KAJ (S.D. Ohio), by filing a consent to join that lawsuit.

19. Honda conducts business in a systematic and continuous manner throughout Alabama and this District.

20. Honda may be served by service upon its registered agent, **Corporation Service Company, Inc., 641 South Lawrence St., Montgomery, AL 36104**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

21. At all relevant times, Honda was an employer of Whatley within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all relevant times, Honda was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. Honda was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. During at least the last three years, Honda has had gross annual sales in excess of $500,000.

25. Honda was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

26. Honda employs many workers, including Whatley, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or

otherwise work on goods or materials that have been moved in or produced for commerce by any person.

27. The goods and materials handled, sold, or otherwise worked on by Whatley, and other Honda employees and that have been moved in interstate commerce include, but are not limited to, automobiles and their component parts.

### FACTS

28. Honda manufactures and distributes automobiles.

29. Many of Honda's employees are non-exempt hourly and salaried workers.

30. Since at least 2021, Honda has used timekeeping software and hardware operated and maintained by Kronos.

31. On or about December 11, 2021, Kronos suffered a disruption in service due to a ransomware attack.

32. The Kronos outage interfered with the ability of its customers, including Honda, to use Kronos's software and hardware to track hours and pay employees.

33. For at least a portion of time following the Kronos outage, Honda failed to keep accurate track of the hours that Whatley and Similarly Situated Workers worked.

34. Instead, Honda has used various methods to estimate the number of hours Whatley and Similarly Situated Workers work in each pay period.

35. As a result of Honda's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

36. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

37. Whatley is one of the thousands of Honda employees affected by these pay and timekeeping practices.

38. Whatley works over 40 hours per week each week for Honda.

39. Whatley has worked 40 hours, or more, each week since the time of the outage in December 2021.

40. Whatley works, on average, about 55 hours each week for Honda.

41. Whatley has worked around 55 hours each for Honda since the outage, on or around December 11, 2021.

42. But Whatley was not paid the proper overtime premium for all hours worked on time, if at all, for each of these weeks since the onset of the Kronos service disruption, on or about December 11, 2021.

43. Instead of paying Whatley for the hours he actually worked (including overtime hours), Honda simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Whatley's actual hours worked and regular pay rates, in multiple workweeks.

44. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

45. Honda knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

46. Honda knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates.

47. Honda could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

48. Instead of accurately tracking hours and paying employees their overtime, Honda decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

49. It was feasible for Honda to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

50. But Honda chose not to do that.

51. In other words, Honda pushed the effects of the Kronos outage onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

52. Whatley is just one of the many Honda employees who had to shoulder the burden of this decision by Honda.

53. Whatley was a non-exempt hourly employee of Honda.

54. Whatley regularly worked over 40 hours per week for Honda.

55. Whatley's normal, pre-Kronos outage hours are reflected in Honda's records.

56. Since the Kronos outage, Honda has not paid Whatley on time, if at all, for his actual hours worked each week.

57. Since the outage took place, Honda has accurately recorded the hours worked by Whatley and its other workers, in multiple workweeks.

58. Honda was aware of the overtime requirements of the FLSA.

59. Honda nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Whatley.

60. Honda's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

61. The full overtime wages owed to Whatley and the Similarly Situated Workers became "unpaid" when the work for Honda was done—that is, on Whatley and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

62. At the time Honda failed to pay Whatley and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Honda became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

63. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

64. Any payment made by MBUIS to Whatley or the Similarly Situated Workers that Honda may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

65. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

66. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Honda's acts and omissions resulting in the unpaid wages in the first place.

67. Whatley and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Honda under federal law.

### COLLECTIVE ACTION ALLEGATIONS

68. Numerous individuals were victimized by Honda's patterns, practices, and policies, which are in willful violation of the FLSA.

69. Based on his experiences and tenure with Honda, Whatley is aware that Honda's illegal practices were imposed on the FLSA Collective.

70. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

71. These employees are victims of Honda's respective unlawful compensation practices and are similarly situated to Whatley in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

72. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

73. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

74. Honda's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

75. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CAUSE OF ACTION—VIOLATIONS OF THE FLSA

76. Whatley incorporates each allegation set forth in paragraphs 1 to 75.

77. By failing to pay Whatley and the FLSA Collective members overtime at 1.5 times their regular rates, Honda violated the FLSA. 29 U.S.C. § 207(a).

78. Honda owes Whatley and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

79. Honda owes Whatley and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

80. Likewise, Honda owes Whatley and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 788.305.

81. Honda knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Whatley and the Collective members the compensation owed to them under the FLSA.

82. Because Honda knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Honda owes these wages for at least the past three years.

83. Honda's failure to pay compensation owed under the FLSA to Whatley and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

84. Because Honda's decision not to pay overtime was not made in good faith, Honda also owes Whatley and the Collective members an amount equal to the unpaid wages as liquidated damages.

85. Accordingly, Whatley and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40

hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### RELIEF SOUGHT

Whatley prays for judgment against Honda as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding Honda liable for violations of federal wage laws with respect to Whatley and all FLSA Collective members covered by this case;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Whatley and all FLSA Collective members covered by this case;

d. For a judgment awarding attorneys' fees to Whatley and all FLSA Collective members covered by this case;

e. For a judgment awarding costs of this action to Whatley all FLSA Collective members covered by this case;

f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Whatley and all FLSA Collective members covered by this case; and

g. For all such other and further relief as may be necessary and appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

*/s/ Victoria L. Dye*
**Victoria L. Dye**
Alabama Bar No. ASB-4887-R77D
**MORGAN & MORGAN BIRMINGHAM PLLC**

2317 Third Ave. N., Ste. 102
Birmingham, AL 35203
T: (659) 204-6363
F: (659) 204-6388
Email: vdye@forthepeople.com

**Andrew R. Frisch, Esq.**
Georgia Bar No. 366105
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., Ste. 4000
Plantation, FL 33324
T: (954) WORKERS
F: (954) 327-3013
Email: afrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
Georgia Bar No. 711884
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 16th Floor
PO Box 4979
Orlando, FL 32802-4979
T: (407) 420-1414
F: (407) 867-4791
Email: rmorgan@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
T: (713) 999-5228
Email: matt@parmet.law

**Attorneys for Plaintiff**